JOHN H. BROWN ET AL., Respondents, v. JOHN E. KIRK, Appellant.

Kansas City Court of Appeals, February 8, 1886.

1. PRACTICE—CONTRACT—NOVATION — HOW AGREEMENT FOR DETERMINED.—Where the allegations of the petition, in respect of an agreement for release on the assumption of payment by a third party, constitute a novation, it presents a question of fact for the jury, under proper instructions from the court. The existence of such agreement, like any other fact of kindred import, may not be susceptible of direct proof, but it is to be determined by the jury from all the facts and circumstances in evidence. "Such a release may be inferred from the acceptance of interest, the receiving of new notes, or the proving a claim in bankruptcy," etc. 1 Parsons on Cont. 218, note 1.

2. —— PRINCIPAL AND SURETY—DISCHARGE OF SURETY—CHARACTER OF OBLIGATION BY PRINCIPAL.—The rule is well settled in this state that to discharge the surety, the contract for extension must be such as will prevent the holder of the debt from instituting action against the principal. To work this result, the agreement must be supported by a valuable consideration. A mere promise of indulgence is not sufficient, it is the *act* of the creditor depriving himself of the power of suing, by something obligatory, which prevents the surety from coming into a court of equity for relief, because the principal having tied his own hands, the surety cannot release them.

3. —— —— RIGHT OF SUBROGATION.—Where the relation of surety and principal exists, *on payment of the debt* by the surety, he is entitled to be subrogated to the rights of the creditor, and where there is a mortgage, to the rights under the mortgage, and could, to that end, compel the assignment of the mortgage. This rests upon the principle, that, in equity, the land becomes the primary fund for the payment of the debt. But the offer to pay

must be *before* the mortgage has been foreclosed and the land sold, in order to give the surety the benefit of the security.

APPEAL from Linn Circuit Court, HON. G. D. BURGESS, Judge.

*Reversed and remanded.*

Statement of case by the court.

The petition states that plaintiffs are husband and wife; that in January, 1875, one Clarkson executed to the plaintiff, Minnie Brown, his promissory note for the sum of $850; and that for the better securing the payment thereof he executed to one Brownlee a deed of trust on certain described lands in Linn county; that in January, 1877, the defendant, Kirk, bought said land of Clarkson, and by arrangement and agreement by all parties, plaintiffs and defendant and Clarkson, the defendant assumed payment of said note as part of the purchase money for said land, and that thereby Clarkson was discharged from the payment of the note, and Kirk became bound therefor to plaintiff, Minnie Brown. The petition charges that defendant afterwards made two payments of interest, and had the time extended for payment of the debt; that in March, 1879, the plaintiffs caused said land to be sold under said deed of trust, and the proceeds of the sale amounting to $500.00, were placed as a credit on the note.

This suit is to recover balance due on the note.

The answer, after admitting the preliminary averments of the petition, alleged that it was in December, 1876, and not in January, 1877, he purchased the land from Clarkson; and that afterwards, January 10, 1877, the following endorsement was made on said note:

"Tenth January, 1877. In the land trade between S. H. B. Clarkson and myself, I am to pay this note, it being a lien on the land.

"[Signed]                                JNO. E. KIRK."

The answer alleges that defendant paid the interest

on the note for only one year; and that on the nineteenth day of March, 1877, defendant sold and conveyed said land to one William Wishard for the consideration of $1,600.00; and that it was stipulated and so expressed in the deed, that Wishard took said land subject to said mortgage, and paid defendant the difference only between the mortgage debt and purchase money, and assumed the payment of said note to plaintiff, to which all parties, plaintiffs, defendant, and Wishard consented; whereby defendant was discharged.

The answer further pleaded, that after the arrangement last aforesaid, the plaintiff collected the interest from said Wishard, and extended the time of payment of said debt for one year, without the knowledge or consent of defendant, whereby he claims that he was discharged and released from further liability on said note.

The answer further pleaded that plaintiffs had caused said land to be sold under the deed of trust, and had bought it in at said sale at a great sacrifice; that plaintiffs well knew the defendant was a non-resident of the county, and that Wishard was a non-resident of the state, and that plaintiffs sold said land without notice to defendant or Wishard, under circumstances evincive of a fraudulent purpose to acquire the land at an unconscionable price, and that the same was bought in by said Minnie, and is yet held by her, at a grossly inadequate price, three or four times less than its actual value; that the sale was so made to defraud and injure this defendant. The answer asks that defendant be permitted to pay plaintiff the whole amount of said note and interest, and that he be subrogated to the rights of the mortgagee, etc.

On motion of plaintiffs, the last plea of the answer was stricken out, as constituting no matter of defence.

The defendant at the trial had before a jury, introduced evidence tending to prove the issues on his part; and the plaintiffs offered evidence tending to disprove the issue as to the novation pleaded respecting the sale made by defendant to said Wishard.

The jury found the issues for the plaintiffs, and the defendant prosecutes this appeal.

A. W. MULLINS, for the appellant.

I. There are two modes by which a novation of parties may take place. (1) Where, by agreement, between all parties, a new debtor intervenes and assumes the debt, in which case the old debtor is discharged. (2) Where a new creditor intervenes to whom the same debtor agrees to pay the debt, in which case the new creditor acquires all the rights of the former creditor. In both of these cases the same rules of law apply ; and the substituted contract completely extinguishes the previous one. 1 Story on Cont. (4 Ed.) sect. 376 ; 1 Pars. Cont. (5 Ed.) 217.

II. The second instruction for plaintiffs assumes *absolutely* that defendant was liable for the payment of the note. In that respect it is wrong in principle and improper and misleading in form. When defendant sold the land to Wishard, and he assumed the payment of the mortgage debt as part of the consideration to be paid by him for the land, Wishard became the principal debtor, and defendant only surety. 1 Jones on Mortgages, sect. 742, and cases cited. Therefore, the extension of time given to Wishard, without the concurrence of defendant, discharged him from all liability on the note. 1 Jones on Mortgages, *supra ; Stillwell v. Aaron,* 69 Mo. 539. The *third* instruction is erroneous on same grounds.

III. The court erred in sustaining plaintiffs' motion to strike out a part of defendant's answer. Having failed to give defendant notice of their claim upon him, and having sold the land for a nominal sum, he should be adjudged subrograted to rights of plaintiffs as to the mortgage. *Allison v. Sutherlin,* 50 Mo. 274.

IV. The verdict is insufficient. *Norvell v. Duvall,* 50 Mo. 272.

M. M. CRANDALL and S. P. HUSTON, for the respondent.

I.   The court did not err in striking out part of defendant's answer.   There is no allegation of fraud, other than that *actual notice* was not given.   *De Jarnette v. De Giverville*, 56 Mo. 440 ;   *Mitchell v. Nodaway Co.*, 80 Mo. 257.

II.   Whether defendant was liable as principal or surety, an agreement to extend time in consideration only of payment of *interest then due* would not discharge him.   To have that effect it must have been made with the principal debtor upon a sufficient consideration. Payment of interest *in advance* is such a consideration, but payment of interest *when due* is not.   *Stillwell v. Aaron*, 69 Mo. 539, and cases cited ; *Hosea v. Rowley*, 57 Mo. 357.

III.   The plaintiffs' *third* instruction simply told the jury that the burden of proof was on the defendant to establish the defence he pleaded.   The verdict, also, is sufficient, as it contains the substance of the issue. Graham & Waterman on New Trials (2 Ed.) 160.

IV.   Unless there was an agreement between *all the parties* to discharge one and take another, there is no right to invoke any equities.   If there was such substitution, the party originally liable was discharged.   *Duncan v. Roberts*, 72 Mo. 469.

PHILIPS, P. J.—The allegations of the petition, in respect of the agreement by which Clarkson was released on the assumption of payment of the note or debt by defendant, constitute a novation.   1 Pars. Cont. (7 Ed.) 217, *et seq. ; Black v. Paul*, 10 Mo. 103.   The answer failed to deny this averment.   On the contrary, it proceeded on the recognition of its truth by pleading a like arrangement respecting the sale to Wishard.   By the novation, Clarkson was discharged as the debtor of plaintiffs, and the debt, so far as he was concerned, was effectually extinguished ; and the defendant, thenceforth, became the debtor of the plaintiffs.   *Butterfield v. Hartshorn*, 7 N. H. 345 ; *Caswell v. Fellows*, 110 Mass. 52 ; *Morris v. Harvey*, 75 Va. 726.

It, therefore, only remains to be ascertained whether, by reason of any of the matters set up and established in the answer, the defendant can escape this personal liability for the debt.

I. The novation pleaded, whereby it is claimed that Wishard was substituted by consent of all the parties to the place of the defendant, presented a question of fact for the jury, under proper directions from the court. With their finding on the facts, we cannot interfere, unless they were misdirected by the court. Among the instructions given on behalf of the plaintiffs, is the following :

"2. The mere fact that plaintiffs, or W. H. Brownlee, trustee for Mrs. Brown, may have received one year's interest from Wishard and may have extended the time of payment one year did not and does not discharge the defendant from liability on the note sued on."

I am of opinion that this instruction was, under the circumstances of this case, calculated to mislead the jury, and to persuade them that they were authorized to disregard one very important element of proof in determining whether there was such novation.

The existence of such agreement, like any other fact of kindred import, may not be susceptible of direct proof, but it is to be determined by the jury from all the facts and circumstances in evidence. Parsons on Cont. (vol. 1, p. 218, note 1), says : "Such a release may be inferred from the acceptance of the interest, the receiving of new notes, or the proving a claim in bankruptcy," etc., citing *Bilborough v. Holmes*, 5 Ch. D. 255.

There were many other facts and circumstances connected with this whole transaction tending most persuasively to show that the plaintiffs recognized the arrangement made between defendant and Wishard for the former's release. And these, coupled with the fact that plaintiffs, after this, dealt with Wishard, collected interest from him, and agreed with him for an extension of time, etc., presented a strong case for the discharge of the defendant on the ground of novation.

In view of this, it at once becomes most apparent that the instruction, in advising the jury that the mere fact of receiving this interest and extending the time of payment did not discharge the defendant, was misleading.

No doubt it was in the mind of the framer of this instruction to meet the other defence set up in the answer as to whether the extension of time, based alone upon the payment of accrued interest, constituted a sufficient consideration to operate as a release of the surety; but there is nothing on the face of the instruction so limiting its operation and design. The jury could as well apply it to the one issue as to the other. It was, therefore, misleading and mischievous; and for this error the judgment must be reversed.

On the trial, the court permitted the husband of plaintiff, Minnie Brown, to testify as a witness. He was an incompetent witness. *White et al. v. Chaney, ante,* p ——. There was no evidence to show that he was the agent of his wife. His agency could not even be established by his testimony in the first instance. *Williams v. Williams,* 67 Mo. 661.

On an examination of his testimony, however, I am unable to discover any fact spoken to by him, either contradicting the evidence of the defendant, or anything which would destroy or affect any fact established by the defence. To maintain the averment respecting the novation at issue, it devolved upon the defendant to show, directly or indirectly, the assent of Mrs. Brown, the real party in interest. No act, no declaration of the husband, not assented to by her, could bind or affect her touching this alleged agreement. The very ground work of the objection to his competency is that he was not the agent of his wife in this matter. The facts testified to by him were rather helpful to the defendant, and his counsel avails himself of them on this appeal. We will not reverse for harmless errors of this character.

II. The next matter of defence arises on the extension of time for the payment of the note made between

plaintiff and Wishard. The evidence clearly enough shows that Wishard did pay one year's interest on the note, and that the time of payment was thereupon extended by plaintiff for one year, which fact was indorsed on the note.

Defendant's contention is, that by the arrangement between him and Wishard, whereby the latter assumed the payment of the mortgage debt, the relation of principal and surety was established between them, and that defendant was the surety ; and, therefore, when plaintiffs, without the knowledge or consent of defendant, extended the time of payment by agreement with the principal, it operated to discharge him from all personal liability on the note.

There is authority of high character for the proposition of law contained in this position. 1 Jones on Mort., sect. 742, and citations. There are authorities, however, of high character, holding the opposite view; that, while the relation of principal and surety exists as between the mortgageor and his grantee, the mortgagee is not affected thereby, and there can be no discharge of the morgageor's liability on the ground of indulgence by the mortgagee to the grantee of the mortgageor. *Corbett v. Waterman*, 11 Ia. 86 ; *Conn. Mut. Ins. Co. v. Mayer*, 8 Mo. App. 18.

While I am inclined to the opinion that there are some facts accompanying and characterizing this case, which tend to show that the plaintiffs treated with the grantee as if recognizing him as the principal debtor, and that, too, under circumstances calculated to lull the defendant into inattention to the debt and security, and that, as applied to this case, the mortgageor should be held to answer for any act in dealing with the grantee calculated to lessen his security and imperil his protection ; yet, this would not relieve the defendant, except on the ground as evidence tending to establish the novation. It appears that the extension of time of payment for one year was made upon the payment of interest then due on the note. There was, therefore, no valuable

consideration to support the agreement for further time. The rule is well settled in this state that to discharge the surety, the contract for extension must be such as will prevent the holder of the debt from instituting action against the principal. To work this result, the agreement must be supported by a valuable consideration. *Hosea v. Rowley*, 57 Mo. 358.

The learned counsel for appellant, however, attempts to draw a distinction, favorable to his client, between an executed and executory contract; that the extension in this case being actually accomplished, the law presumes the act was for a valuable consideration. Even if we were to concede such presumption, the reasonable inference from the facts of record is, that the only consideration for the extension was the payment of accrued interest; for the endorsement on the note is simply : "interest paid on this note to January 1, 1878, and time extended for one year."

If the surety was discharged by reason of the stipulation for delay, it was at the moment it was made, and he did not have to await the running of the year before he could avail himself of the fact.

In paying the interest when and as he did, Wishard only paid what he owed ; and the stipulation for another year's time, depending alone on this payment, was without consideration to support it ; and the plaintiff, or defendant, might have sued Wishard the next day. The giving of time, which will discharge the surety is "not a mere promise of indulgence ; it is the act of the creditor depriving himself of the power of suing, by something obligatory which prevents the surety from coming into a court of equity for relief, because the principal having tied his own hands, the surety cannot release them." *Nichols v. Douglas et al.*, 8 Mo. 49.

III. The only remaining defence made by the answer is that contained in the portion stricken out by the court.

There can be no question of the rule of equity that the relation of surety and principal existed between defendant and Wishard, and that on payment of the

debt by the surety, he would be entitled to be subrogated to the rights of the mortgagee under the mortgage, and could, to that end, compel the assignment of the mortgage. "This rests upon the principle, that in equity the land becomes the primary fund for the payment of the debt." *Orrick v. Durham*, 79 Mo. 180. The obstacle, however, in the way of according to the defendant the benefit of this rule, is the fact that he has not paid off the debt, and before any offer to do so, the mortgage had been foreclosed, and the land sold. The mortgage has, therefore, served its purpose, and is *functus officio*, unless there be some other rule of equity arising on the facts pleaded, which would revive the mortgage in favor of the defendant.

The land being the primary fund for the payment of the debt, the mortgagee did right in first proceeding against it. This, his contract expressed in the mortgage, authorized him to do. There is no pretense that the mortgagee in the foreclosure sale did not pursue the letter of the deed. Therefore, on principle, before this sale can be avoided, and the mortgage resuscitated, there should appear some element of fraud, deceit, or concealment connected with the conduct of the mortgagee in foreclosing as and when he did, contrary to good conscience as recognized by the courts of equity.

The first imputation upon the conduct of the mortgagee conveyed in the portion of the answer stricken out, is that during the time in question the defendant was a non-resident of the county in which the proceedings were conducted, and that Wishard was a non-resident of the state; and that no notice was given them, or either of them, of the sale. The contract did not require the giving of any other notice than the simple advertisement of sale. The answer does not charge any specific act of concealment or device on plaintiffs' part, to withhold notice of the sale from defendant, or any other person.

It is next charged that the land was greatly sacrificed by the sale, being conducted in the defendant's absence. But there is no averment of any act or strategem of the

plaintiffs to prevent competitive bidding, nor that the sale was conducted at an unusual hour, or unseasonable time. Mere inadequacy of price is not sufficient to avoid the sale, in absence of the circumstances indicating imposition, oppression, or undue influence. *Phillips v. Stewart et al.*, 59 Mo. 492–3. There is no such palpable inadequacy in the price realized at this sale as would justify a court in setting it aside on that account. *Browne v. R. R. Co.*, 43 Mo. 294. We confess to a strong impression, made in reviewing this record, that the plaintiffs in holding the land, confessedly of much greater value than the entire amount of their original debt, while demanding more money from the unoffending defendant, are exacting the pound of human flesh, and the court should, so far as the spirit of the law will permit, see that they get no more than the bond calls for.

On account of the error in giving the second instruction for the plaintiffs the judgment is reversed, and the cause remanded. All concur.