Garrison v. O'Donald.

---

73 621
f73 633

MARTHA A. GARRISON, Appellant, v. WAYNE O'DONALD
*et al.*, Respondents.

### St. Louis Court of Appeals, February 15, 1898.

Promissory Note: CONTRACT: AGENCY: NOVATION: EVIDENCE. In a
suit on a promissory note, where the evidence was that plaintiff's
agent had general authority to "do as he pleased," as to loaning and
securing plaintiff's money, and that he continued from year to year
to collect interest on the note in suit, from parties who defendants
claimed had taken their places and assumed payment of the note, it
tended to prove the general agency and contract of novation.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED; all concurring, Judge BIGGS in the result.

*Barbour & McDavid* for appellant.

There is no proof in this case showing or tending to show that Sheppard had any authority to release or discharge defendants, the O'Donalds, from personal liability on the note sued on. *Alexander v. Rollins*, 14 Mo. App. 109; *Hoppe v. Saylor*, 53 *Id.* 4. See, also, Mech. on Ag'cy, sec. 273; *White v. R. R.*, 19 Mo. App. 400; *Brooks v. Jameson*, 55 Mo. 505; *Cupples v. Whalen*, 61 *Id.* 583.

When a party relies on ratification, he must plead it in order to make it available at the trial. *Ferneau v. Whitford*, 39 Mo. App. 311, 316. See, also, *Steunkle v. R'y*, 42 Mo. App. 73; *Windsor v. Bank*, 18 *Id.* 665; *Hyde v. Larkin*, 35 *Id.* 365; *Cravens v. Gilliland*, 63 Mo. 28; *Middleton v. R'y*, 62 *Id.* 579; *Baldwin v. Burrows*, 47 N. Y. 211, 212; Mech. on Ag'cy, sec. 128; Story on Ag'cy, sec. 239, note 1; *Moore v. Lockett*, 2 Bibb (Ky.) 67; 4 Am. Dec. 683.

To constitute novation, all the parties to both the old and the new contract must assent to the novation, or the substitution of the new contract for the old; all must agree to the release and discharge of the old debtor and substitution of the new. *Bank v. Gardner*, 57 Mo. App. 268; *Jacobs v. Maloney*, 64 *Id.* 271; *Lumber Co. v. Meffert*, 59 *Id.* 437; *Lee v. Porter*, 18 *Id.* 377; *Vanderline v. Smith*, *Id.* 55; Par. on Con. [7 Ed.], sec. 221; *Aiken & Co. v. Peters*, 45 Ark. 313; *Butterfield v. Hatshorn*, 7 N. H. 345.

*Patterson & Patterson* and *White & McCammon* for respondents.

Novation of this kind is fully proven when it is shown that there is "the intervention of a new debtor, where another person becomes debtor in my stead, and is accepted by the creditor, who discharges me from the original debt." 3 Add. on Con. [8 Ed.] 1226–1231; *Heaton v. Angier*, 7 N. H. 397; *Black v. Paul*, 10 Mo. 103; *Edgell v. Tucker*, 40 *Id.* 523; *Butterfield v. Hartshorn*, 7 N. H. 345; *Lester v. Bowman*, 39 Iowa, 611; *Tatlock v. Harris*, 3 T. R. 180; *Cadens v. Teasdale*, 53 Vt. 469; *Caswell v. Fellows*, 110 Mass. 52; *Brown v. Kirk*, 20 Mo. App. 529; *Manney v. Frazier*, 27 Mo. 419; *Wright v. McCulley*, 67 *Id.* 134; 1 Par. on Con. [6 Ed.] 217; *Nicholson v. Glover*, 41 Ind. 24; 16 Am. and Eng. Ency. Law, 876.

The collection of interest by the creditor from the new debtor is a circumstance from which alone the release of the original debtor may be inferred. *Brown v. Kirk, supra.*

Agency like any other fact may be proved by circumstances and the conduct of the parties. Mech. on Ag'cy, sec. 83; *Worth v. Ollis*, 61 Mo. App. 401.

BLAND, P. J.—Suit on the following promissory note:

"SPRINGFIELD, Mo., February 15, 1888.
"$2,000.

"On or before five years after date we promise to pay to the order of Martha A. Garrison, at the Commercial Bank, Springfield, Missouri, two thousand dollars, for value received, with nine per cent per

annum interest after date until paid.    Interest payable
semi-annually.

"WAYNE O'DONALD,

her

"LOU   x   O'DONALD."

mark.

The note is indorsed on the back as follows:

"THOMAS CONLON,

"S. H. HORINE,

"Protest waived."    "S. H. HORINE,

"THOMAS CONLON."

On the back of the note payments of interest were
indorsed for each and every year to and including the
year 1894. . Defendants Horine and Conlon suffered
judgment by default.    Wayne and Lou O'Donald filed
their separate answer, which after admitting the exe-
cution of the note, is as follows:

"That said note, together with a note for $500,
executed by their daughters, Kate and Nellie O'Donald,
maturing at the same time with above mentioned note
and payable to said plaintiff was secured by a deed of
trust on the following described real estate, to wit:"
(We omit description.)

Defendant further states that in August, 1889,
the defendants, Thomas Conlon and S. H. Horine,
bought of defendants Wayne O'Donald and Lou
O'Donald, for the sum of $3,800 the following de-
scribed real estate:    Then follows description of part
of land in deed of trust.

"That in consideration of such sale and as a part
of the purchase price for said land so sold as aforesaid,
said Conlon and Horine agreed to assume the indebt-
edness aforesaid, and the plaintiff in consideration of
the assumption of said notes by said Horine and
Conlon, agreed to release these defendants and their
said daughters from the payment of the same.    It

was therefore agreed by and between the plaintiff and these defendants and their said. daughters, and the said S. H. Horine and Thomas Conlon that these defendants should convey said tract of land last above described to said Horine and Conlon and said Horine and Conlon should assume and agree to pay the said indebtedness to plaintiff, and the plaintiff should release and discharge the defendants and their said daughters from the payment of the same, and should release from the lien of said. deed of trust that portion of the said tract described in said deed of trust not sold to said Horine and Conlon, and take and substitute said Horine and Conlon in lieu thereof.

"And in consummation and carrying out of the said agreement and substitution aforesaid, these defendants then and there made conveyance to said Horine and Conlon of the tract above described and agreed to be conveyed by them, and the said Horine and Conlon assumed and agreed to pay the two said notes, and the plaintiff executed a deed of release to the tract of land agreed to be released as aforesaid, and released these defendants and their said daughters from the payment of the said notes and took and substituted said Horine and Conlon in lieu thereof."

Defendants, upon whom was the burden of proof, read in evidence a deed from Wayne, Lou, Kate and Nellie O'Donald to S. H. Horine and Thomas Conlon, dated August 15, 1889, conveying a tract of land in the city of Springfield of six hundred feet front and containing this clause, after reciting the deed of trust to plaintiff upon the land, "with the particulars of which incumbrance the grantees are thoroughly conversant and hereby assume and agree to pay." Defendants also offered deed of trust securing to plaintiff the notes mentioned in the answer, covering the

VOL. 73 app—40

land conveyed to Horine and Conlon and the homestead of Wayne O'Donald; also a deed of trust dated August 19, 1889, made by plaintiff to Wayne O'Donald, by which his homestead was released from the foregoing deed of trust. Wayne O'Donald testified in substance that he borrowed $2,500 from plaintiff, through W. D. Sheppard, who acted as her agent, and executed the note in suit for $2,000, and his two daughters, Kate and Nellie O'Donald their note for $500 to cover the amount borrowed, both of which were secured by the deed of trust in evidence; that the money was paid him by Sheppard's individual check; that W. A. Knott acted as his agent in the transaction with Sheppard, and also in the latter transaction when the sale of the land was made to Horine and Conlon; that he paid interest to Sheppard on the notes, until he sold to Horine and Conlon, after which he made no more payments. As to the trade with Horine and Conlon, he testified that he wanted to get the notes off of his shoulders, and to do so wanted to sell land enough for that purpose; that Horine came and talked to him in regard to the land and looked over it, and that they agreed on the price; Horine and Conlon were to pay $3,800 for the land, and in order to make the sale he consented to take $1,300 worth of Scott Investment stock, Horine and Conlon to pay the two notes, the one sued on and the other $500 note; that he said to Horine that there was only one way that the sale could be made of the land, which would be that they would have to assume the payment of the two notes and release the balance of the place from the deed of trust, which was done, and that W. A. Knott then transacted the business for him with Horine and Conlon and with Sheppard as the agent of Miss Garrison; that he was to be released from all responsibility on account of the notes, and to have the balance of the land released; that no

demand had been made upon him for payment of either principal or interest of the notes, until about a year before the suit was brought; that at the time the deal was made Horine was reputed to be worth $75,000, and Conlon $15,000 or $20,000.

W. A. Knott testified that he transacted the business for the O'Donalds; that he saw the buyers Horine and Conlon, who are willing to take the property on terms proposed by O'Donald; that he saw Sheppard regarding the acceptance of Horine and Conlon and the piece of property that was to be conveyed to them; that it was agreed that the homestead of O'Donald and the makers of the notes should be released from all further obligation, and that Horine and Conlon were accepted by Sheppard in lieu of the makers; that Sheppard said Horine was good for that amount of money without any other security, and that Horine and Conlon to consummate the transaction went to Sheppard's bank and indorsed the note by writing their names on the back of it, and that all the parties understood the basis of the trade.

Conlon testified that he had indorsed the note; that he assumed the debt as part of the consideration for the land and regarded it as his note, and had no defense to the action, and that he and Horine had paid interest on it to Sheppard after they indorsed it.

Sheppard on the part of plaintiff testified that he did not agree to release the O'Donalds from the note; that Horine and Conlon were taken as security in lieu of the land released; that he so wrote the plaintiff and explained the transaction to her that way; that she executed the deed of release on those conditions and wrote witness, and *told him to do as he pleased, but not to jeopardize her interest;* that he was acting as the agent of plaintiff during all the time; that neither of the O'Donalds paid interest on the note after it was

indorsed by Horine and Conlon; that Horine paid all the interest after the deed of release was given, and that he had made no demand of the O'Donalds for principal or interest until after Horine ceased to pay the interest.

Horine testified that Knott would talk to him and then go and talk to Sheppard; that he did not know what the understanding between Knott and Sheppard as to the release of the O'Donalds; all he knew about it was his end of the trade; that he assumed the notes and that Sheppard held him for the notes and would notify him when the interest became due and to call and pay it. The court of its own motion gave the following instructions:

"If you find from the evidence that W. D. Sheppard was authorized by plaintiff to act for her in the matter in controversy, and if you further find that he acting for her, entered into an agreement with the O'Donalds and Horine and Conlon that he would accept Horine and Conlon as payors of the note sued on, and release said O'Donalds from the payment thereof, and that said Horine and Conlon indorsed said note, and all parties agreed to the substitution and the release of the O'Donalds, then you will find the issues in favor of the defendants, Wayne and Lou O'Donald."

"It is not necessary to such novation that all of the parties may have been together and agreed, but it is necessary that all parties understood that Horine and Conlon should be substituted and the O'Donalds released, and all parties should have consented to such arrangements."

"The burden of proving such was upon the defendants and they must establish the same by a preponderance or greater weight of evidence. If they have not so proven it to your satisfaction your verdict should be for the plaintiff for the note and interest, less the

payments indorsed thereon. In determining these issues you are to take into consideration all the facts and circumstances in evidence."

"The court instructs the jury, that the right to negotiate loans does not as a matter of law carry with it the authority to pass on the solvency of borrowers or the safety or value of the security offered, but the said authority must be determined from all the facts in the case. In order to bind the plaintiff, Sheppard must have had express authority to release the O'Donalds, or he must have had a general authority to do whatever he thought best in the matter."

There was a verdict and judgment for the O'Donalds.

After unsuccessful motions in arrest and for new trial plaintiff appealed. Her contentions here are, *first*, that the evidence does not show a contract of novation by which the O'Donalds were released and Horine and Conlon were accepted in their stead; and *second*, that the evidence fails to show that CONTRACT: agency: nova- Sheppard had authority as the agent of tion: evidence. plaintiff to release the O'Donalds from their obligation as makers of the note. If it was agreed by and between the O'Donalds and Sheppard (he being authorized) that Horine and Conlon should pay the note and that when indorsed by them the plaintiff should look to them also for payment, then there was a release of the O'Donalds, for there is no dispute of the fact that Horine and Conlon assumed the payment of the note and treated it and still acknowledge it as their debt, nor of the fact that they by the purchase of the land owed O'Donald the amount they assumed and agreed to pay plaintiff, which they were released from paying to O'Donald because and in consideration of the fact that they did agree and promised to pay the Garrison notes. All the conditions of a

substitution of one debtor for another were fulfilled, if the evidence for the O'Donalds is accepted as disclosing the truth of the transaction and that of Sheppard is rejected. *Black v. Paul*, 10 Mo. 103; *Edgell v. Tucker*, 40 Mo. 523; *Brown v. Kirk*, 20 Mo. App. 524. There was substantial evidence that Sheppard, as to loaning and securing plaintiff money, was clothed with general authority to "do as he pleased"—to use the language of plaintiff's letter to him about this very transaction. The note remained in his hands and he continued to collect the interest on it as long as Horine and Conlon continued from year to year to pay it. This fact in itself is a circumstance tending to prove both his general agency and the fact that he made the contract of novation as contended by the O'Donalds. *Brown v. Kirk, supra.* His authority was to loan the plaintiff money, to secure the loans and make collections, which necessarily carried with it the power to change the security and to do what he deemed best to protect the plaintiff's interest. *Gentry v. Ins. Co.*, 15 Mo. App. 215; *Edwards v. Thomas*, 66 Mo. 468; *Summerville v. R. R.*, 62 Mo. 391.

The instructions given by the court on the question of Sheppard's authority as the agent of the plaintiff to make the contract of novation, was very favorable to the plaintiff. The jury with the instructions before them found that Sheppard had express authority to release the O'Donalds from their liability and to accept Horine and Conlon as payors of the note. Looking at the whole evidence as preserved in the bill of exceptions we are not prepared to say that this finding is without evidence to support it, or even against the weight of the evidence, and affirm the judgment.

All concur. Judge BIGGS in the result.