STATE OF MISSOURI EX REL. MACON CREAMERY COMPANY, A CORPORATION, RELATOR, v. GEORGE E. MIX, JUDGE OF THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, MISSOURI, RESPONDENT.*—7 S. W. (2d) 290.

St. Louis Court of Appeals. Opinion filed June 5, 1928.

*Corpus Juris-Cyc. References: Assignments, 5CJ, p. 916, n. 44; Bills and Notes, 8CJ, p. 98, n. 68; p. 297, n. 78; p. 302, n. 79; p. 304, n. 17; p. 820, n. 71; Corporations, 14aCJ, p. 1406, n. 80; p. 1420, n. 5; Courts, 15CJ, p. 853, n. 84.

*Bryan, Williams & Cave* for relator.

*Jeffries, Simpson & Plummer* for respondent.

SUTTON, C.—This is a proceeding in prohibition. Upon the filing of the petition, the provisional writ of this court issued. The cause has been submitted here upon the respondent's demurrer to the petition.

The relator, Macon Creamery Company, charges in its petition here that on the 12th day of August, 1927, there was filed in the circuit court of the city of St. Louis, by the National City Bank of St. Louis. a petition, which (omitting caption and signature) is as follows, to-wit:

"Now comes the plaintiff in the above-entitled cause and for its cause of action states that it is and was at all the times herein mentioned a banking corporation duly organized and existing under and by virtue of the laws of the United States of America, with its principal office and place of business in the city of St. Louis, Missouri; that defendants are both corporations, duly organized and existing according to law; that the defendant Macon Creamery Company has its principal office and place of business in the county of Macon, State of Missouri, and that defendant Kroger Grocery and Baking Company.

has its principal Missouri office and place of business in the city of St. Louis, Missouri.

"Plaintiff states that on or about August 6, 1927, defendant Kroger Grocery and Baking Company purchased certain goods, wares and merchandise from defendant Macon Creamery Company and agreed to pay therefor by honoring sight drafts drawn by said defendant Macon Creamery Company on it as drawee; that the said drafts were to be drawn for the amounts agreed upon to be paid for the said merchandise; that the said drafts were to be paid as a satisfaction of the indebtedness existing on account of the purchase of said merchandise, and were to be paid upon presentation to it of said sight drafts.

"Plaintiff further states that pursuant to said understanding, arrangement and agreement between defendants, defendant Macon Creamery Company, on or about August 6, 1927, drew its sight draft dated Macon, Missouri, August 6, 1927, in the sum of three thousand nine hundred thirty-three dollars ($3933), payable to the order of Farmers Trust Company of Macon, as payee, and upon the Kroger Grocery and Baking Company, care of American Trust Company, St. Louis, Missouri, as drawee therein; that on or about August ——, 1927, defendant Macon Creamery Company duly endorsed said draft and sold, assigned and transferred the same for value to the Farmers Trust Company of Macon, payee therein; that a duly verified copy of said draft is hereto attached, marked 'Exhibit A.'

"That pursuant to said understanding, arrangement and agreement between defendants, defendant Macon Creamery Company, on or about August 9, 1927, drew its sight draft dated Macon, Missouri, August 9, 1927, in the sum of three thousand four hundred eighty-eight and 40/100 dollars ($3488.40), payable to the order of Farmers Trust Company of Macon, as payee, and upon the Kroger Grocery and Baking Company, care of American Trust Company, St. Louis, Missouri, as drawee therein; that on or about August ——, 1927, defendant Macon Creamery Company duly endorsed said draft and sold, assigned and transferred the same for value to the Farmers Trust Company of Macon, payee therein; that a duly verified copy of said draft is hereto attached marked 'Exhibit B.'

"Plaintiff further states that both of said above-mentioned drafts were duly endorsed, sold, assigned, transferred and delivered, for value, by the Farmers Trust Company of Macon, payee therein, to this plaintiff; that plaintiff thereupon in due course became the holder and owner of said drafts, for value, and has ever since continued to be the holder and owner thereof.

"Plaintiff further states that defendant Macon Creamery Company duly complied with all of the terms of its contract with defendant Kroger Grocery and Baking Company with reference to the furnishing of the goods and merchandise agreed to be furnished under said

above-mentioned arrangement, and duly furnished all of the goods and merchandise of the amounts and value stated in the above-mentioned sight drafts; that defendant Kroger Grocery and Baking Company duly accepted all of said goods and merchandise as being in accordance with said above-mentioned contract, and now has and retains the same in its possession as owner thereof.

"Plaintiff further states that immediately after the receipt thereof and in due course, plaintiff presented or caused to be presented the above-mentioned sight drafts to defendant Kroger Grocery and Baking Company for payment, and was advised by said defendant that the goods called for therein had not been received and that if said drafts would be held for a short period of time until the goods arrived the same would be paid.

"Plaintiff further states that said goods were received by defendant, Kroger Grocery and Baking Company, as heretofore stated prior to the failure of the Farmers Trust Company as hereinafter alleged.

"Plaintiff upon information coming to it is advised that on or about the ―――― day of August, 1927, the Farmers Trust Company of Macon, Missouri, was placed in the hands of the Commissioner of Finance of the State of Missouri, who is now in charge of said bank for that purpose; that after the arrival and receipt by defendant Kroger Grocery and Baking Company of the above-mentioned goods and merchandise, the said above-mentioned drafts were again presented to it for payment, but said defendant refused to pay the same, stating as its reason therefor that it had been requested by defendant Macon Creamery Company to dishonor said drafts and to refuse to pay the same and to remit the amounts of money called for therein to the said Macon Creamery Company direct, and to refuse to pay the same to the holder and owner of said drafts; that under and pursuant to the above-mentioned arrangements, contract, and agreements existing between them, defendant Kroger Grocery and Baking Company was obligated to accept and pay the face amount of the drafts heretofore described and had informed plaintiff of its said agreement and had agreed to pay the same as above alleged.

"Plaintiff further states that for the purpose of protecting the said Macon Creamery Company against any loss on account of its deposits in and with said Farmers Trust Company at the time of the closing thereof, and notwithstanding said agreements and undertakings, defendant, at the request of Macon Creamery Company acquiesced in by Kroger Grocery and Baking Company, agreed together that defendant Kroger Grocery and Baking Company would dishonor said drafts and refuse to pay the same, and that upon the dishonor of said drafts said defendant would pay the amount thereof to defendant Macon Creamery Company, and that by virtue of said understanding and agreement between the said parties, defendant Macon Creamery Company knew that the drawee in said drafts would

not honor the same and said defendant Macon Creamery Company was not entitled to notice of the presentment for payment of said drafts to defendant Kroger Grocery and Baking Company, their dishonor and notice, that the holder would look to the other parties upon said drafts for payment thereof.

"Plaintiff further states that by reason of the matters and things heretofore alleged and by virtue of the agreement existing between defendants, the said drafts heretofore mentioned were to be given and received by the parties thereto in full payment, satisfaction and discharge of the claims for merchandise heretofore mentioned; that the execution and delivery of said drafts and the purchase thereof by plaintiff constituted an equitable assignment to the plaintiff of the claims existing on behalf of the Macon Creamery Company against the Kroger Grocery and Baking Company for the merchandise heretofore mentioned and plaintiff became upon the purchase of said drafts, entitled as assignee to the money due upon said claims from defendant Kroger Grocery and Baking Company.

"Plaintiff further states that defendant Kroger Grocery and Baking Company has not yet paid the defendant Macon Creamery Company the above-mentioned amounts, but is threatening to make said payment and has stated to plaintiff that said payment would be made immediately.

"Plaintiff states that it has no plain, adequate and complete remedy at law and unless defendant Kroger Grocery and Baking Company is enjoined from making said payments to defendant Macon Creamery Company plaintiff will be deprived of its substantial rights in collecting said money from defendant Kroger Grocery and Baking Company and that it will be irreparably injured and damaged by reason thereof.

"Wherefore plaintiff prays judgment against defendants in the sum of seven thousand four hundred twenty-one and 40/100 dollars ($7421.40) ; that defendant Kroger Grocery and Baking Company be enjoined and restrained from paying any of the money due upon the above-mentioned drafts, or for the merchandise represented thereby, to defendant Macon Creamery Company, and that defendant Macon Creamery Company be enjoined and restrained from accepting or receiving the same from defendant Kroger Grocery and Baking Company until the further order of this court and for such other judgments, orders and decrees in the premises as to the court shall seem meet and proper."

That thereafter said cause was transferred to Division No. 2 of said circuit court, which is presided over by the Honorable MOSES HARTMANN.

That on said 12th day of August, 1927, a summons was issued by the clerk of said circuit court directed to the sheriff of Macon county,

Missouri, commanding said sheriff to summons relator, which summons (omitting signature and formal parts) is as follows:

"We command you to summon Macon Creamery Company, a corporation, to appear before the judges of our circuit court on the first day of the next term thereof, to be held in the city of St. Louis, at the courthouse in said city, on the first Monday of October next, then and there to answer the complaint of the National City Bank of St. Louis, a corporation, as set forth in the annexed petition; and have you then and there this writ."

That thereafter in August, 1927, the said sheriff made return to said writ, which (omitting signature and formal parts) is as follows:

"I hereby certify that at the county of Macon, State of Missouri, on this 15th day of August, A. D. 1927, in the within-named suit, I served process on the within-named defendant, the Macon Creamery Company, a corporation, being the first defendant served herein.

"And I further certify, that at said time and at and in the business office of said company, defendant hereinafter described, I executed said service on said company, defendant, by delivering at and in said business office a duly certified copy of the original writ therein and of the hereto attached copy hereof together with a duly certified copy of the original petition and of the hereto attached copy thereof to Rudolph Miller, Sr., who then was and ever since has been the president of the said company, defendant, a creamery corporation then and ever since having in the city of Macon in the county of Macon aforesaid its said business office where said process was served as aforesaid, that is to say. the business office, usually had and maintained by it in the transaction of its usual, ordinary and customary business, with its said agent, Rudolph Miller, Sr., duly in charge thereof and in said business office and in charge thereof at the time of said service of said process as aforesaid."

That thereafter in October, 1927, the relator filed a plea to the jurisdiction of said circuit court, which (omitting caption and signature) is as follows:

"Now comes the Macon Creamery Company, one of the defendants in the above-entitled cause, and, specially entering its appearance for this purpose and this purpose only, denies that this court has any jurisdiction of this defendant in this cause and moves the court to quash the writ issued herein, for the reasons:

"1. That it appears on the face of the petition that this court has no jurisdiction of the person of this defendant, Macon Creamery Company, and for reason therefor this defendant says that it appears on the face of the petition herein that this defendant is a corporation with its principal office and place of business in the county of Macon, State of Missouri, and not within the city of St. Louis, Missouri.

"2. That it appears on the face of the petition herein that said petition states no cause of action whatever against this defendant's codefendant, Kroger Grocery and Baking Company.

"3. That it appears on the face of the petition that it states no joint cause of action against this defendant and the codefendant Kroger Grocery and Baking Company.

"4. That it nevertheless appears from the writ issued in this cause and the return thereon of service on this defendant that such writ was issued to the sheriff of Macon county and served upon this defendant in Macon county and not in the city of St. Louis.

"Wherefore, in consideration of the premises, this particular defendant moves the court to quash the return of the sheriff herein on this defendant for the reason that it is not sufficient to show that this court has any jurisdiction over this defendant, and for the reason that it does not show that this defendant has an office or is doing business in the city of St. Louis or was served within the city of St. Louis, and this defendant prays the court to dismiss plaintiff's petition for want of jurisdiction."

That thereafter, and on the 12th day of December, 1927, the Honorable MOSES HARTMANN, Judge of said circuit court, overruled said plea to the jurisdiction.

That thereafter, and on the 3rd day of January, 1928, the Honorable MOSES HARTMANN was transferred to Division No. 4 of said circuit court and the respondent, the Honorable GEORGE E. MIX, was assigned to said Division No. 2 of said court.

That thereafter, and on the —— day of January, 1928, the relator filed in said cause a motion to vacate and set aside the order of said court made and entered on the 12th day of December, 1927, overruling the plea of the relator to the jurisdiction of said court, which said motion was by the court, on the 3rd day of February, 1928, overruled.

That the proceedings instituted and followed as aforesaid are beyond the jurisdiction of the said circuit court for the following reasons:

1. It appears on the face of the petition filed in the case in said circuit court, wherein the National City Bank of St. Louis is plaintiff and Macon Creamery Company and Kroger Grocery and Baking Company are defendants, that this petitioner is a corporation with its principal office and place of business in the county of Macon, State of Missouri, and not within the city of St. Louis, Missouri.

2. That it appears on the face of the petition in said cause that no cause of action against the Kroger Grocery and Baking Company is stated.

3. That it appears on the face of said petition that no joint cause of action against this petitioner and the Kroger Grocery and Baking Company is stated.

4. That it appears from the writ issued in said cause and the return thereon of service on this petitioner that such writ was issued to the sheriff of Macon county and served upon petitioner in Macon county and not in the city of St. Louis.

That the respondent, GEORGE E. MIX, as judge of the circuit court of the city of St. Louis, Missouri, has ruled as aforesaid that he has jurisdiction over the person of relator, although a plea to the jurisdiction was filed in said cause, and he is continuing to exercise jurisdiction over the person of relator in excess of the jurisdiction and authority conferred upon the circuit court of the city of St. Louis, Missouri, by the laws of the State of Missouri.

Counsel endeavor to sustain respondent's jurisdiction of the person of the relator on several grounds, to-wit: (1) That the petition in the cause pending before respondent states a joint cause of action against relator and his codefendant in said cause; (2) that the cause of action against relator pleaded in said cause accrued in the city of St. Louis; (3) that it will be presumed that relator had an office in the city of St. Louis for the transaction of its usual and customary business; and (4) that respondent has jurisdiction and power to determine whether or not the petition states a cause of action, where the cause of action accrued, and whether or not relator has an office for the transaction of its usual and customary business in the city of St. Louis, and that such determination is not subject to review by prohibition.

There is no question that if the petition states a joint cause of **action** against relator and his codefendant, the respondent got jurisdiction of the person of relator. [State ex rel. Columbia National Bank of Kansas City v. Davis (Mo.), 284 S. W. 464.] It is clear, however, that the petition does not state a joint cause of action against relator and his codefendant. Indeed, it does not state any cause of action at all against said codefendant. [Secs. 913, 918, 920, and 921, R. S. 1919; Clements v. Yeates, 69 Mo. 623; Rousch v. Duff, 35 Mo. 312; Kellogg v. Citizens Bank, 176 Mo. App. 288, 162 S. W. 643; Albers v. Commercial Bank, 85 Mo. 173; Kimball v. Donald, 20 Mo. 577; Ford v. Angelrodt, 37 Mo. 50.]

It is not contended that there was an acceptance by the Kroger Company of the drafts drawn by the relator or that any cause of action arose against the Kroger Company in favor of the National City Bank on the theory of an acceptance of the drafts by the Kroger Company. But the contention is that there was an equitable assignment to the National City Bank of the relator's account for goods sold to the Kroger Company. It is settled both by statute and judicial decision that a bill of exchange of itself does not operate as an assignment, and that the drawee is not liable on the bill unless and until he accepts the same, and the acceptance must be in writing signed by the drawee, and we can see nothing in the facts peculiar to this case to render the Kroger Company liable to the National City Bank on the theory of an assignment.

It is also clear that the cause of action pleaded by the National City Bank against relator did not accrue in the city of St. Louis. The

drawer of a bill of exchange does not contract to pay the money in the place on which it is drawn, but only guarantees its acceptance and payment in that place by the drawee, and agrees, in default of such payment, upon due notice, to reimburse the holder in principal and damages at the place where the bill was drawn, and the cause of action in favor of the holder against the drawer accrues at that place. [Amsinck v. Rogers, 189 N. Y. 252; Hibernia National Bank v. Lacombe, 84 N. Y. 367; Story on Bills of Exchange, sec. 131; 8 C. J. 98; Crawford v. Branch Bank at Mobile, 6 Ala. 12; Wood v. Gibbs, 35 Miss. 559.]

The respondent cites and relies on Motherstadt v. Harry Newman, Inc., Motor Cars, 204 Mo. App. 619, 217 S. W. 591, holding that it is the breach of the contract rather than the making of it that accrues the cause of action, and that the place of the breach, rather than the place of making the contract, fixes the place where the cause of action accrues. Obviously that case does not afford any support for respondent's view. Rather it supports the view that the cause of action pleaded by the National City Bank against relator accrued in Macon county, where the bills of exchange were drawn, for it was in that county that the relator's contract was breached. As the drawer of the bills relator did not contract to pay the bills in St. Louis, but contracted to pay them in Macon county if they were not paid by the drawee in St. Louis. In other words, the contract of relator as drawer of the bills was that if the bills were not paid by the Kroger Company as drawee, the relator as drawer would pay the same in Macon county, where they were drawn.

But notwithstanding the petition of the National City Bank alleges that relator had its principal office and place of business in Macon county, and the record shows that no summons was issued to the city of St. Louis for service on relator in that city, respondent contends that it will be presumed that relator has an office in said city for the transaction of its usual and customary business, and that his jurisdiction must be sustained under section 1180, Revised Statutes 1919, which provides as follows: "Suits against corporations shall be commenced either in the county where the cause of action accrued . . . or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

Section 1192, Revised Statutes 1919, which is *in pari materia* with said section 1180, provides as follows:

"When any such summons shall be issued against any incorporated company, service on the president or other chief officer of such company, or, in his absence, by leaving a copy thereof at any business office of said company with the person having charge thereof, shall be deemed a sufficient service; and if the corporation have no business office in the county where suit is brought, or if no person be found in

charge thereof, and the president or chief officer cannot be found in such county, a summons shall be issued, directed to the sheriff of any county in this State, or any other State, where the president or chief officer of such company may reside or be found, or where any office or place of business may be kept of such company, and the service thereof shall be the same as above.''

It will be observed that, under the provisions of section 1192, issuance of summons to Macon county was not authorized unless relator had no business office in St. Louis, or no person was found in charge thereof, and the president or chief officer could not be found in said city, so that in order to sustain respondent's jurisdiction of the person of the relator we must indulge three presumptions, to-wit, (1) that the relator had a business office in said city, (2) that there was no person in charge of such business office upon whom service could be had, and (3) that the president or chief officer could not be found in said city. If it were established as a fact, even without the aid of presumption, that the relator had a business office in St. Louis, we do not see how the presumption would follow that there was no person in charge of such office upon whom service could be had. It would seem that the natural and reasonable presumption to be drawn, in the absence of any showing to the contrary, would be that there was some person in charge of such office upon whom service could be had.

It was held in Darby v. Weber Implement Company (Mo. App.), 208 S. W. 116, where the record proper showed that the defendant was a corporation having its principal office in the city of St. Louis, that it might reasonably be inferred that the defendant had no business office in Stoddard county, where the suit was brought. In the present case the petition of the National City Bank expressly avers that the relator has its principal office and place of business in the county of Macon, and the return of the officer to the summons shows that the summons was served on the president of relator in that county. Surely, in this state of the record there is no ground to reasonably presume that the relator had a business office in the city of St. Louis, and that there was no person in charge of such office upon whom service could be had.

Moreover, the statute clearly contemplates that where a defendant corporation has a business office in the county where suit is brought, then that no person was found in charge of such office, and that the president or chief officer could not be found in such county, must appear by the return of an officer to a summons issued to such county, to authorize the issuance of a summons to another county. This is obvious from the language of the statute, to-wit, ''if no person be found in charge thereof, and the president or chief officer cannot be found in such county.'' This evidently means if no person ''be found'' in charge of such office, and if the president or chief officer ''cannot be found'' in such county, by an officer armed with process

and charged with the duty to find and serve such person, president, or chief officer. In the present case it affirmatively appears that no summons whatever was issued for relator to the city of St. Louis. The issuance of summons to Macon county, and the service thereof in that county, was therefore unauthorized, and conferred no jurisdiction upon respondent over the person of the relator.

The rule invoked by respondent, that where the court has jurisdiction of the subject-matter and of the person of defendant, it has the power to determine, erroneously if it will, whether or not the petition states a cause of action, and the power to so determine may not be interfered with by prohibition, is well settled in this State. [State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. 191; Shubach v. McDonald, 179 Mo. 163, 78 S. W. 1020; State ex rel. Hoffman v. Scarritt, 128 Mo. 331, 30 S. W. 1026; State ex rel. Fabrico v. Johnson, 293 Mo. 302, 239 S. W. 844; State ex rel. Bromschwig v. Hartmann (Mo. App.), 300 S. W. 1054.] It seems, too, that the same rule should apply with respect to the power of the court to determine where the cause of action stated in the petition accrued. But it must not be overlooked that the rule presupposes the existence of jurisdiction of the subject-matter and of the person. It gives no sanction to the view that the court may determine erroneously matters of jurisdiction appearing on the face of the record, and by so doing confer upon itself jurisdiction. The court may not erroneously determine that the petition states a cause of action against a defendant residing in the county where the suit is brought in order to confer upon itself jurisdiction of the person of a codefendant residing and served with process in another county. Nor may the court confer upon itself jurisdiction of such codefendant by erroneously deciding that the cause of action stated in the petition against such codefendant accrued in the county where the suit is brought. [State ex rel. Jackson v. Bradley, 193 Mo. 33, 91 S. W. 483.]

Respondent invokes the rule announced in State ex rel. Fabrico v. Johnson, 293 Mo. 302, 239 S. W. 844, to the effect that where a court has jurisdiction of the subject-matter of an action, and the question of its jurisdiction of the person turns upon some fact to be determined by the court, its determination of the fact in favor of its jurisdiction is conclusive against the writ of prohibition. This rule has no application here for the very obvious reason that the question of respondent's jurisdiction does not turn upon any fact before him for his determination. His want of jurisdiction affirmatively appears upon the face of the record.

Respondent cites and relies on St. Charles Savings Bank v. Thompson & Gray Quarry Co. (Mo.), 210 S. W. 868. In that case summons was issued for defendant to St. Charles county, and was returned *non est*. Thereupon an *alias* summons was issued to the city of St. Louis, where service was had. The cause was tried, and judgment was

given for plaintiff. None of the evidence introduced at the trial was preserved in the bill of exceptions. On appeal it was presumed that the defendant had a business office in St. Charles county, to sustain the jurisdiction of the court where the suit was brought and tried. That case affords no authority for sustaining the jurisdiction of respondent in the cause under review here. There was no trial of the cause pending before respondent, no evidence was introduced, and there was no *non est* return to a summons issued for relator to the city of St. Louis, where the suit was brought. In these respects this case is clearly distinguishable from the Savings Bank case.

State ex rel. Standard Fire Insurance Co. v. Gantt, 274 Mo. 490, 203 S. W. 964, cited and relied on by respondent, is not in point here, for the reason that the relator in that case was a foreign insurance company, service upon which is specially provided for by section 6310, Revised Statutes 1919. Under that section, in suits against foreign insurance companies, service must be had on the State superintendent of the insurance department, and section 1192, providing for service in suits against ordinary business corporations, has no application.

It is clear that the respondent has no jurisdiction of the person of the relator in this case. The Commissioner therefore recommends that the provisional writ of prohibition issued herein be made absolute.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The provisional writ of prohibition issued herein is accordingly made absolute. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.